UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


CIVIL ACTION NO. 12-10484-RWZ


ANDRE SAUNDERS

v.

JEFFREY GRONDOLSKY

MEMORANDUM OF DECISION

May 14, 2013


ZOBEL, D.J.

Petitioner Andre Saunders is a federal inmate currently serving a ten-year

sentence at the Federal Medical Center in Devens, Massachusetts ("FMC Devens"). He

seeks habeas relief under 28 U.S.C. § 2241 to restore good time credit that he alleges

was revoked without due process. Respondent Jeffrey Grondolsky, the warden at FMC

Devens, has now moved to dismiss the petition for failure to state a claim.

I.    **Background**[1]

Petitioner was sentenced in 2005 to ten years of imprisonment for conspiracy to

distribute heroin and possession with intent to distribute. His currently projected

---

[1] As appropriate on a motion to dismiss, the facts here are given as alleged in the petition.
See Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 4 (1st Cir. 2011). Additional facts are drawn as
appropriate from the public inmate data record and prison disciplinary records submitted by respondent;
the parties do not dispute the authenticity of those records, and the disciplinary records in particular are
central to petitioner's claim and are referenced in the petition. See Watterson v. Page, 987 F.2d 1, 3 (1st
Cir. 1993).

release date is December 7, 2013, based on his current good time credit.[2]

On May 15, 2011, petitioner was watching television in a prison common room along with a number of other inmates. Apparently displeased by the broadcast, petitioner began using obscene language towards the television. A correctional officer named Murphy approached him and told him to refrain from swearing. According to Murphy, petitioner challenged him to point out what provision of the prison regulations forbade using obscenities. Murphy then escorted petitioner outside the prison common room, and told him that obscene and abusive language was forbidden by prison regulations.

According to Murphy, petitioner then raised his right hand and began to extend his arm in an apparent attempt to poke Murphy in the chest. As petitioner's finger approached within six inches of Murphy's chest, Murphy stepped back and instructed him to lower his arm immediately. Petitioner then walked away and proceeded to his cell.

Petitioner, on the other hand, claims he never made any attempt to poke Murphy in the chest. He insists that part of Murphy's story is pure fiction.

Murphy reported the incident to his lieutenant, who spoke with petitioner and issued him an incident report advising him that he had violated prison regulations. That incident report was reviewed by a Unit Discipline Committee ("UDC"), which also spoke with petitioner about the matter. Petitioner repeated to the UDC that he had not pointed

---

[2] Under 18 U.S.C. § 3624(b), a federal inmate serving a term of imprisonment longer than one year may receive up to fifty-four days of good time credit per year. That credit decreases the total amount of time that the inmate must spend in custody.

at Murphy, and told them that the security camera videotape of the incident would support his story.

The UDC referred the incident report to Discipline Hearing Officer ("DHO") Anthony Amico for a hearing. Petitioner was charged with three violations: using abusive or obscene language, insolence towards a staff member, and threatening another person with bodily harm. He received a written copy of the charges against him, and was informed of his right to call witnesses, present documentary evidence, and be represented at the DHO hearing by a prison staff member. Petitioner declined representation and did not seek to call any witnesses.

The DHO hearing was held on May 27, 2011. At the hearing, petitioner admitted to using profanity directed at the television, but insisted that he had not been abusive toward anyone and had not pointed at Murphy or physically approached him. According to petitioner, he also asked Amico at the hearing to review the security camera videotape of the incident, which he insisted would show he had not pointed at Murphy. Petitioner says Amico responded that he did not need to review the videotape because he believed Murphy's report.

Amico found petitioner had been insolent towards a staff member and had threatened another person with bodily harm. However, he found petitioner had not violated the prison regulation against abusive or obscene language. In making those findings, Amico relied on and accepted Murphy's account of the incident. Amico's written report does not refer to any videotape of the incident, nor does it indicate that petitioner asked him to review any such videotape.

Based on his findings, Amico imposed various sanctions on petitioner, including the loss of thirty-one days of good time credit. Petitioner appealed that decision to the prison's regional director. He asserted various grounds of error, including that Amico had refused to review the videotape and had stated that he didn't need the videotape because he believed Murphy's report. The regional director's office did not address that asserted error; however, it found the evidence presented at the hearing insufficient to justify a charge of threatening another person with bodily harm. It noted that the evidence presented would justify a charge of attempted assault instead. The regional director therefore remanded the case to Amico for further review.

On remand, Amico held a second hearing, at which he found petitioner had violated the prison regulations regarding attempted assault and insolence against a staff officer. Although the record is not entirely clear, petitioner apparently asserts that he again asked Amico to review the videotape, and Amico again refused. Relying on Murphy's report, Amico once more imposed various sanctions, including the same loss of thirty-one days of good time credit.

Petitioner once again appealed Amico's decision to the regional director's office, focusing on Amico's refusal to review the videotape. The regional director denied the appeal, stating: "A review of the record reveals there was no video evidence presented, nor did you request any video evidence." Docket # 1, Ex. G. Petitioner then appealed that decision to the general counsel at the central office of the Bureau of Prisons ("BOP"); he again asserted that he had asked Amico to review the videotape of the incident and Amico had refused. After waiting more than forty calendar days for a

4

response to his appeal,[3] petitioner filed this suit, claiming that he had been deprived of good time credit without due process. Respondent now moves to dismiss, claiming that petitioner was afforded all the process he was due.

## II.   Legal Standard

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The court accepts as true all factual allegations contained in the complaint, but not legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). If the complaint fails to state a plausible claim upon which relief can be granted, it must be dismissed. Id.

## III.   Analysis

Respondent concedes that the BOP must afford due process to an inmate before it can deprive him of good time credit. See Wolff v. McDonnell, 418 U.S. 539, 556-58 (1974). Generally speaking, due process requires that "the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." Superintendent v. Hill, 472 U.S. 445, 454 (1985). In addition, the sanction imposed must be "supported by

---

[3] According to 28 C.F.R. § 542.18, if an inmate appeals to the general counsel and does not receive a response within forty days, he may consider his appeal denied. The BOP central office did eventually respond to petitioner's appeal some eight months after it was filed; it denied the appeal, stating that petitioner "failed to raise any concerns regarding, or to request, the video footage of the incident during the discipline hearing or the rehearing." Docket # 11, Ex. E at 1.

some evidence in the record." Id.[4]

Here, petitioner received advance written notice of the disciplinary charges and a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. Moreover, Amico's decision was supported by some evidence in the record: namely, Murphy's account of the incident. See Hill, 472 U.S. at 455-56 ("some evidence" standard is satisfied if "there is any evidence in the record that could support the conclusion reached").

However, petitioner has stated a plausible claim that he was denied due process because Amico arbitrarily refused to review the security camera videotape of the incident. As described above, due process guarantees an inmate the right to present documentary evidence in his defense before he is deprived of good time credit, at least when doing so "will not be unduly hazardous to institutional safety or correctional goals." Wolff, 418 U.S. at 566; see also Hill, 472 U.S. at 445.[5] Where an inmate seeks to present relevant and important documentary evidence in the government's possession, the government must either make that evidence available or furnish an explanation of the reasons for the denial. Smith v. Mass. Dep't of Corr., 936 F.2d 1390, 1401 (1st Cir. 1991). Moreover, a hearing examiner cannot arbitrarily ignore relevant

---

[4] Petitioner argues that prison regulations required Amico to determine the facts by the "greater weight of the evidence." 28 C.F.R. § 541.8(f). That is true. But this court is obliged to review Amico's decision under the "some evidence" standard, rather than reassessing the weight of the evidence independently. Hill, 472 U.S. at 455-56.

[5] In this context, the term "documentary evidence" has been construed to include videotapes. See, e.g., Arceneaux v. Pearson, 449 F. App'x 396, 397-98 (5th Cir. 2011) (considering whether due process required DHO to review allegedly exculpatory videotape); Burns v. Penn. Dep't of Corr., 642 F.3d 163, 173-75 (3d Cir. 2011); see also Bogue v. Vaughn, 439 F. App'x 700, 704-06 (10th Cir. 2011) (considering inmate's right to review videotapes); Pittman v. Bledsoe, 442 F. App'x 639, 641 (3d Cir. 2011) (same).

evidence. "[A]n inmate's right to procedural due process is violated when a hearing examiner simply fails to view available evidence to determine its relevance and suitability for use at a disciplinary hearing." Burns v. Penn. Dep't of Corr., 642 F.3d 163, 174 (3d Cir. 2011).[6] Where a hearing examiner refuses to review certain evidence, the burden rests on him to explain why that refusal was neither arbitrary nor capricious. See Ponte v. Real, 471 U.S. 491, 499 (1985).

Here, petitioner claims that he asked Amico at both of his hearings to review the videotape of the incident, and that Amico refused solely because he had already decided to believe Murphy's story. That allegation is circumstantially supported by the disciplinary record's notation that petitioner asked the UDC to review the videotape. It is plausible that if petitioner asked the UDC to review the video footage, he would also ask Amico to do the same. Of course, Amico's reports do not record that petitioner asked him to review the videotape. But if petitioner's allegations are true, one would hardly expect Amico to carefully memorialize his own due process violation. Given the record as it stands, petitioner has stated a plausible claim that he was deprived of due process because Amico arbitrarily refused to review the security camera videotape of the incident.

That is not to say petitioner's claim will necessarily succeed. There remain disputed issues of fact over whether petitioner in fact asked Amico at either hearing to

---

[6] See also Piggie v. McBride, 277 F.3d 922, 924-25 (7th Cir. 2002); cf. Fernald v. Holt, 446 F. App'x 489, 491-92 (3d Cir. 2011) (no due process violation where the hearing examiner made an independent assessment that the videotape was not relevant). But see Arceneaux v. Pearson, 449 F. App'x 396, 398 (5th Cir. 2011) ("[A] failure to review available documentary evidence does not in itself render a hearing unfair.").

review the videotape. Moreover, if Amico had an appropriate reason for refusing to view the videotape at the disciplinary hearing—for instance, if no such videotape existed, or if its review would have presented an undue hazard to prison security—then petitioner's due process rights were not violated. See Ponte, 471 U.S. at 497 ("[P]rison officials may choose to explain their decision at the hearing, or they may choose to explain it 'later.'"). But at this stage of the proceedings, petitioner's claim survives respondent's motion to dismiss.[7]

## IV.    Conclusion

Respondent's motion to dismiss (Docket # 10) is DENIED.  A scheduling conference will be held on May 28, 2013, at 3:00 pm.


_____May 13, 2013_____                    _____/s/Rya W. Zobel_____
               DATE                                    RYA W. ZOBEL
                                            UNITED STATES DISTRICT JUDGE


---

[7] To the extent that petitioner raises a separate and independent due process claim that Amico was biased against him, that claim is dismissed as not plausibly supported by his factual allegations. Cf.  Orwat v. Maloney, 360 F. Supp. 2d 146, 163 & n.13 (D. Mass. 2005). The fact that Amico believed Murphy rather than petitioner, even combined with the allegation that Amico refused to view the videotape, is not enough to show a bias on Amico's part that would violate due process.